UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| ARTHUR LEE STEWART, § <br> TDCJ #01440946, § <br> § <br> Plaintiff, § <br> VS. § <br> § <br> KWABENA OWUSU, *et al*, § <br> § <br> Defendants. § | CIVIL ACTION NO. 3:15-CV-0080 |

## MEMORANDUM OPINION AND ORDER

Plaintiff Arthur Lee Stewart, an inmate at the Texas Department of Criminal Justice–Correctional Institutions Division ("TDCJ"), brings this civil rights suit against Defendants Kwabena Owusu, M.D., and Johnny Abraham.[1] Plaintiff alleges that Defendants were deliberately indifferent to his medical needs when they denied him morphine. Plaintiff proceeds *pro se* and *in forma pauperis*. At the Court's request, the Texas Attorney General submitted a *Martinez* report (Dkt. 20) attaching relevant records, and served Plaintiff with a copy.[2] After the Court converted the report to a summary judgment motion (Dkt. 21), Plaintiff filed a response (Dkt. 22). Having reviewed the evidence submitted, the parties' briefing, and the applicable law, the Court concludes that summary judgment should be **GRANTED** for Defendants and that this case must be **DISMISSED** for the reasons that follow.

---

[1] On October 27, 2016, on Plaintiff's motion, the Court dismissed without prejudice Plaintiff's claims against Dr. Thomas Donohue and Unknown Pharmacist (Dkt. 15).

[2] *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1987). The report and relevant records have been filed under seal to protect the plaintiff's private medical information.

## I. BACKGROUND

Stewart complains that he was denied morphine in 2014 and 2015, during his incarceration at TDCJ's Ramsey III Unit in Rosharon, Texas. He brings claims against Kwabena Owusu, M.D., a doctor at the Ramsey III Unit, and against Johnny Abraham, a family nurse practitioner. The Texas Attorney General states that both Defendants are employees of the University of Texas Medical Branch ("UTMB"). Along with its *Martinez* report, the Attorney General has supplied an affidavit from Steven Bowers, M.D., the Legal Coordinator for UTMB Correctional Managed Care, regarding medical care provided to Plaintiff (Dkt. 20-1, at 2-5).[3]

After Plaintiff had back surgery in 2010, he was prescribed morphine, among other medications (Dkt. 1-1, at 3). Plaintiff reports that he took morphine until September 24, 2014, and was "doing fine with his therap[eut]ic exercises" (*id*.). Dr. Bowers' affidavit generally corroborates Plaintiff's account, stating that Stewart was prescribed morphine regularly from 2010 through 2014 (Dkt. 20-1, at 3).

In September 2014, Plaintiff's morphine prescription was not renewed. Dr. Bowers, having reviewed Plaintiff's medical records, states that on September 25, 2014, Dr. Owusu prescribed Tylenol 3 instead of morphine:

> On September 25, 2014, Dr. Owusu reviewed Mr. Stewart's medical chart because there was a request from the pharmacy to refill Mr. Stewart's Morphine prescription once again. The note from this review states that Mr. Stewart was previously approved for Morphine for back pain by Dr. Vincent and that approval had since expired. The note goes on to state that Mr. Stewart has a history of trafficking drugs and trading them at other

---

[3] Throughout this Memorandum, pin cites to the court record refer to the pagination on the Court's ECF system.

> units and at one point, the medical provider was attempting to taper down the dosage Mr. Stewart was on; Mr. Stewart's dosage of Morphine had steadily increased from 15 mg to 60 mg since 2011 following his surgery. For these reasons, Dr. Owusu decided to defer the renewal of Morphine to Dr. Donahue, the medical director, and prescribe Tylenol 3 for Mr. Stewart's pain in the meantime.

(Dkt. 20-1, at 3-4). Clinic records attached to the *Martinez* report include those from Dr. Owusu's September 25, 2014 encounter with Plaintiff, which support the summary in Dr. Bowers' affidavit (Dkt. 20-1, at 192).[4] That same day, nursing notes indicate that Plaintiff "refused" the prescribed Tylenol 3 "stating that he has an allergy to this medication," but that Plaintiff's chart did not list Tylenol 3 as an allergy (Dkt. 20-2, at 962). Dr. Bowers' affidavit states that the medical records do not contain "any indication of the side effects Mr. Stewart alleged he was experiencing from Tylenol 3, also a pain reliever" (Dkt. 20-1, at 4).

Plaintiff alleges that the non-renewal of his morphine prescription resulted in "severe pain," shaking, and difficulty in standing and walking (Dkt. 1-1, at 4-5). He states that he took Tylenol 3 "under duress" but that it did not control his pain (*id*. at 5). He grieved the denial of morphine through both stages of TDCJ's administrative grievance procedure (Grievance No. 2015023807). Officials responded to the grievance with notations that Plaintiff's provider had changed his medication to Tylenol 3, that he

---

[4] Other medical records provided by the Attorney General provide additional support for the concerns reflected in Dr. Owusu's September 25, 2014 notes. On August 22, 2013, Plaintiff presented at the TDCJ clinic requesting an increase in morphine. Medical personnel denied his request based on suspicions that Plaintiff was diverting his medications, stating, "PCP has been getting reports from nursing personnel[] that offender appears in clinic without his cane, and without evidence if pain, smiling and joking to receive his daily dosage of meds" (Dkt. 20-1, at 202). Nursing notes from March 22, 2014, reflect that Plaintiff was "irate" with clinic staff "because his morphine 60 mg [was] placed on hold by pharmacy" and that he was "demanding to be given this drug" (Dkt. 20-2, at 972).

had been compliant with the Tylenol 3 regimen, and that he had additional upcoming medical appointments scheduled (Dkt. 1-3, at 3-6).

Plaintiff states in his complaint that Dr. Owusu renewed Plaintiff's morphine prescription approximately six months later, on February 20, 2015 (Dkt. 1-1, at 8). Plaintiff characterizes the renewal as a belated attempt by Dr. Owusu to "correct his mistake" (*id*. at 9). Plaintiff states, and the medical records corroborate, that he received frequent medical attention during the six-month period without morphine, and that Tylenol 3 and other pain management was made available to him.[5] UTMB medication compliance records submitted with the *Martinez* report show that, after Plaintiff's morphine prescription was renewed, he was administered morphine daily from February 20, 2015, through August 23, 2016 (Dkt. 20-5, at 13-71).

Plaintiff alleges that Dr. Owusu's non-renewal of his morphine prescription on September 25 was "intentional interference" with medical treatment by an unnamed

---

[5] Although Plaintiff alleges that he filed several requests to see Dr. Owusu that were "never answered" (Dkt. 1-1, at 6), in fact Plaintiff's filing on September 24, 2015, attached multiple "sick call" slips that demonstrate TDCJ responsiveness to his requests (Dkt. 9). Moreover, as recounted in Dr. Bowers' affidavit (Dkt. 20-1, at 3-4), clinic records attached to the *Martinez* report demonstrate that Plaintiff received regular medical attention. On October 15, 2014, Dr. Owusu saw Plaintiff in clinic and observed that he had "no acute distress or probem" and "ambulate[d] steadily" (*id*. at 190). Dr. Owusu requested that Plaintiff's Tylenol 3 prescription be renewed and referred him to a pain management clinic (*id*.). At the pain management clinic at Hospital Galveston on November 5, 2014, medical staff recommended that Plaintiff continue with morphine and gabapentin for pain (Dkt. 20-3, at 337-38). On December 12, 2014, Plaintiff did not appear for his appointment at clinic for pain medication (Dkt. 20-1, at 185). On January 1, 2015, nursing notes reflect that Plaintiff requested that his pain medication be changed from Tylenol 3 to morphine because he was "in pain all the time," could not walk to the insulin line, and could "barely walk to the pill line to get the Tylenol 3" (Dkt. 20-2, at 948). Clinic staff observed "no facial grimacing," steady gait, and independent walking "with a limp using a cane" (*id*.), but nevertheless put in a request for an appointment. On January 5, 2015, Plaintiff was seen by Defendant Abraham at clinic (Dkt. 20-1 at 184).

4 / 13

specialist who previously had prescribed morphine and had told Plaintiff that the prescription would be extended past September (Dkt. 1-1, at 4-5). He also alleges generally that Defendants were "negligent" in their medical treatment when they allowed his morphine to lapse, which led to increased back pain and difficulty standing and walking. Regarding Abraham, Plaintiff alleges that, in clinic on January 5, 2015, Abraham refused his request for morphine despite Plaintiff's reports of pain (*id.* at 6). Clinic notes from January 5 reflect that Abraham advised Plaintiff that "he needs to stay in line" to get his medications and further advised him to take insulin to control his diabetes (Dkt. 20-1, at 184).

In his response to the *Martinez* report, Plaintiff asserts that many of the medical records provided by the Attorney General are falsified or inaccurate.[6]

Plaintiff seeks injunctive relief ordering Defendants to give him morphine (Dkt. 1-1, at 11). Given Plaintiff's statement in his pleadings that his morphine prescription was renewed in February 2015, this request for injunctive relief is moot. Plaintiff also seeks compensatory damages of $50,000 against each Defendant and punitive damages of $10,000 (*id.*).

## II. STANDARDS OF REVIEW

### A. The PLRA and *Pro Se* Pleadings

---

[6] *See e.g.*, Dkt 22, at 1 (alleging that Dr. Williams is being investigated for falsifying document); *id*. at 2 (stating that the Attorney General "absolutely cannot provide this court evidence" that Plaintiff was diverting his medications); *id*. (alleging that clinic notes were made in bad faith); *id*. at 3 (alleging that Dr. Owusu "lied" when he said he would put an order for morphine on the computer); *id*. (alleging that clinic records about Plaintiff's appointment with Abraham do not accurately reflect the encounter). *See also* Dkt. 24 (Plaintiff's letter to Court complaining of TDCJ "negligence" that "all gets covered up").

Because Plaintiff is an inmate proceeding *in forma pauperis*, the Court is required by the PLRA to scrutinize the claims and dismiss the complaint, in whole or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §§ 1915A(b), 1915(e)(2)(B); *see* 42 U.S.C. § 1997e(c) (providing that the court "shall on its own motion or on the motion of a party dismiss an action brought with respect to prison conditions" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief"). An administrative report submitted by state officials pursuant to *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), is a tool to assist courts in making a determination of frivolity under 28 U.S.C. § 1915. *See Norton v. Dimazana*, 122 F.3d 286, 292-93 (5th Cir. 1997); *see also Cay v. Estelle*, 789 F.2d 318, 323 & n.4 (5th Cir. 1986) (discussing the utility of a *Martinez* report).

In reviewing the pleadings, the Court is mindful of the fact that Plaintiff proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). Even under this lenient standard a *pro se* plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

### B. Summary Judgment—Rule 56

The Court has construed the *Martinez* report filed by the Attorney General's Office as a motion for summary judgment. Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Id*. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id*.

In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (internal citation and quotation marks omitted). However, the non-movant cannot avoid summary judgment simply by presenting "conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Jones v. Lowndes Cnty.*, 678 F.3d 344, 348 (5th Cir. 2012) (internal citation, alteration and quotation marks omitted);

*see Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Likewise, Rule 56 does not impose upon the Court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. Evidence not referred to in the response to the motion for summary judgment is not properly before the Court, even if it exists in the summary judgment record. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

Although Plaintiff is proceeding *pro se*, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992). Even a *pro se* plaintiff must specifically refer to evidence in the summary judgment record in order to place that evidence properly before the court. *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 217 & n.9 (5th Cir. 2016); *E.E.O.C. v. Simbaki, Ltd*., 767 F.3d 475, 484 (5th Cir. 2014) ("Despite our general willingness to construe pro se filings liberally, we still require *pro se* parties to fundamentally abide by the rules that govern the federal courts. *Pro se* litigants must properly . . . present summary judgment evidence") (internal citation and quotation marks omitted).

### III.  DISCUSSION

#### A.  Official Immunity

Stewart seeks compensatory damages of $50,000 against each Defendant and punitive damages of $10,000 (Dkt. 1-1, at 11). To the extent he sues Defendants in their official capacity as state employees, Defendants are entitled to immunity under the Eleventh Amendment from claims for monetary damages. Unless expressly waived, the

Eleventh Amendment bars an action in federal court by a citizen of a state against his or her own state. *See Lewis v. Univ. of Tex. Med. Branch at Galveston*, 665 F.3d 625, 630 (5th Cir. 2011); *Martinez v. Texas Dep't of Criminal Justice*, 300 F.3d 567, 573 (5th Cir. 2002). The Eleventh Amendment bars a suit for money damages against UTMB, as a state agency, under 42 U.S.C. § 1983. *Oliver v. Scott,* 276 F.3d 736, 742 & n.5 (5th Cir. 2002). The Eleventh Amendment also bars a suit for money damages against state employees acting in their official capacity. *Id*.

Because both of the individual defendants in this case are sued for actions taken during the course of their employment with UTMB, the claims against them in their official capacity as state employees are barred by the Eleventh Amendment. Accordingly, Defendants are entitled to summary judgment on this issue.

### B. Eighth Amendment Claims

Stewart alleges that Defendants deprived him of morphine between September 2014 and February 2015. Section 1983, 42 U.S.C. § 1983, provides a vehicle for a claim against a person "acting under color of state law," such as a state prison official, for a constitutional violation. See *Pratt v. Harris Cty., Tex*., 822 F.3d 174, 180 (5th Cir. 2016) (internal quotation marks and citation omitted); *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002). Because Stewart was, at all relevant times, a convicted felon in state prison, his claims regarding denial of adequate medical care are governed by the Eighth Amendment prohibition against "cruel and unusual" conditions of confinement. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *see Helling v. McKinney*, 509 U.S. 25, 33 (1993)

(the Eighth Amendment "requires that inmates be furnished with the basic human needs, one of which is 'reasonable safety'").

To prevail on his Eighth Amendment claim, Plaintiff must demonstrate that Defendants exhibited "deliberate indifference" to his "serious medical needs, constituting an unnecessary and wanton infliction of pain." *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (internal citations and quotation marks omitted); *see Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference is an "extremely high standard." *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). It requires "more than an allegation of mere negligence, but less than an allegation of purpose or knowledge." *Hinojosa v. Livingston*, 807 F.3d 657, 665 (5th Cir. 2015). "The mere delay of medical care can also constitute an Eighth Amendment violation but only 'if there has been deliberate indifference [that] results in substantial harm.'" *Easter*, 467 F.3d at 463 (quoting *Mendoza v. Lynaugh*, 989 F.2d 191. 193 (5th Cir. 1993)).

The Eighth Amendment standard has both an objective and subjective component. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). First, the prisoner must show "objective exposure to a substantial risk of serious harm." *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006). Second, he must show that the defendant acted, or failed to act, with deliberate indifference to the risk. *Id*. at 345-46. "A prison official acts with deliberate indifference 'only if [(A)] he knows that inmates face a substantial risk of serious bodily harm and [(B)] he disregards that risk by failing to take reasonable measures to abate it.'" *Id.* at 346 (quoting *Farmer*, 511 U.S. at 847).

### 1. Claims against Dr. Owusu

Plaintiff alleges that Dr. Owusu was "deliberately indifferent" to his serious medical needs because of Dr. Owusu's "intentional interference" with his morphine prescription (Dkt. 1-1, at 9). As stated above, on September 25, 2014, Dr. Owusu deferred Plaintiff's request for a renewed morphine prescription to Dr. Thomas Donohoe, noting Plaintiff's history of trafficking and trading medications. Medication compliance records supplied by the Attorney General reflect that Plaintiff's morphine was restarted in February 2015 and administered daily through August 2016.

The records presented by the parties demonstrate that Stewart was not dispensed morphine for approximately six months, but during that period received regular medical care for his pain, including Tylenol 3. Stewart's claim that he was denied medical treatment in violation of the Eighth Amendment is without merit. *See Varnardo v. Lynaugh*, 920 F.2d 320 (5th Cir. 1991); *McCord v. Maggio*, 910 F.2d 1248, 1251 (5th Cir. 1990) (upholding the dismissal of a deliberate indifference claim where medical records documented that the prisoner was not denied medical attention). Moreover, Stewart's allegations of negligence by Defendants are insufficient to state a claim. Even if Stewart could establish medical malpractice or negligence, such a showing would be insufficient to establish deliberate indifference or a violation of the Eighth Amendment. *See Hinojosa*, 807 F.3d at 665; *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001).

Stewart may disagree that the proper drug was prescribed for his pain, but an inmate's mere disagreement with medical treatment does not constitute deliberate indifference absent exceptional circumstances. *See Rogers v. Boatright*, 709 F.3d 403,

410 (5th Cir. 2013); *Estelle*, 429 U.S. at 107 (explaining that the decision whether to provide a particular type of treatment "is a classic example of a matter for medical judgment"). Stewart has not demonstrated a genuine issue of material fact that the medical staff's decision to prescribe alternatives to morphine was deliberately indifferent to a serious medical need, nor that it caused him an unnecessary and wanton infliction of pain. *See Easter*, 467 F.3d at 463. Similarly, to the extent he alleges a delay in medical treatment, he fails to demonstrate a genuine issue of material fact as to "substantial harm." *See id*.

Summary judgment is granted for Defendant Owusu.

### 2. Claims against Abraham

Plaintiff alleges that Abraham was deliberately indifferent to his serious medical needs on January 5, 2015, when he "fail[ed] to provide adequate treatment" (Dkt. 1-1, at 9). In particular, Plaintiff complains that Abraham did not fulfill Plaintiff's request for morphine at the January 5 appointment (*id*. at 6).

Clinic records attached to the *Martinez* report show that, at the January 5 appointment, Abraham provided Plaintiff with medical treatment, as well as instructions about how to receive the medications Plaintiff was requesting (Dkt. 20-1, at 184). No competent summary judgment evidence supports Stewart's allegation that Abraham was deliberately indifferent to his serious medical needs, nor that Abraham caused Plaintiff unnecessary and wanton infliction of pain. *See Easter*, 467 F.3d at 463. For the reasons stated above regarding Plaintiff's claims against Dr. Owusu, Plaintiff fails to demonstrate

a genuine issue of material fact as to his Eighth Amendment claim and summary judgment is granted for Defendant Abraham.

### C. Qualified Immunity

Because Plaintiff has not shown a constitutional violation, the Court need not address whether Defendants are entitled to qualified immunity. *See Estate of Henson v. Wichita Cty, Tex.*, 795 F.3d 456, 462 (5th Cir. 2015).

### IV. CONCLUSION

Based on the foregoing, the Court **ORDERS** as follows:

1. Summary judgment is **GRANTED** for Defendants.

2. The complaint filed by Plaintiff Arthur Lee Stewart is **DISMISSED with prejudice**.

The Clerk will provide a copy of this Memorandum Opinion and Order to Plaintiff and to *amicus* counsel of record for the Defendants.

SIGNED at Galveston, Texas, this 25th day of May, 2018.

_____
George C. Hanks Jr.
United States District Judge